THE UNITED STATES

*vs.*

H. A. WISE and EDWARD STANLEY.

CRIMINAL COURT.   DECIDED MAY 14, 1842.

*Warrant against a Member of Congress.*

| | |
|---|---|
| The plea of privilege will not avail a member of Congress to prevent him from being arrested on a warrant that charges " that there | was probable cause to believe a breach of the peace was about to be committed." |

On the 12th of May, 1842, Judge Thurston issued a warrant charging that " there is probable cause to believe that the honorable H. A. Wise and the honorable Edward Stanly, members of the House of Representatives, are about to commit a breach of the peace by fighting a duel, and that preparations are now making by said parties to commit said breach of the peace."

Mr. Wise was arrested and the return made by the marshal before Judge Morsell of the Circuit Court.   Mr. Wise appeared in person.

P. R. FENDALL, District Attorney, for the United States.

Mr. Wise denied the right of any judge or justice in this District to require of him to give or sign any bond obliging him to keep the peace outside of the District, and pleaded his privilege from arrest as a member of Congress, the warrant not charging actual breach of the peace.

On the 14th of May, 1842, the honorable Messrs. Goode and Hunter of Virginia appeared as counsel for Mr. Wise before Judge Dunlop of the Criminal Court.

Mr. Goode maintained the following propositions:

1st. That the warrant does not state on whose information the charge was made.

2d. That the warrant charges no specific offense.

3d. That the defendant, being a member of the House of Representatives, he is privileged from arrest, except for an actual breach of the peace which is not charged in the warrant.

Mr. Hunter cited the proceedings in the Court of Common Pleas in England and the decision of Chief-Justice Pratt, settling the question as raised in the third objection,* in the celebrated case of Wilkes† that members of Parliament are privileged from arrest except in certain cases named.

That the Constitution, Art. 1, Sec. 6, clause 1, provides that "they shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses." Jef-

---

*19 State Trials, 987; The third matter insisted upon for Mr. Wilkes is that he is a member of Parliament (which has been admitted by the King's sergeants) and entitled to privilege to be free from arrests in all cases except treason, felony and actual breach of the peace, and, therefore, ought to be discharged from imprisonment without bail; and we are all of opinion that he is entitled to that privilege and must be discharged without bail. In the case of the Seven Bishops, 12 State Trials, 430, the court took notice of the privilege of Parliament, and thought the bishops would have been entitled to it if they had not judged them to have been guilty of a breach of the peace; for three of them, Wright, Holloway and Allybone, deemed a seditious libel to be an actual breach of the peace, and, therefore, they were ousted of the privilege most unjustly. If Mr. Wilkes had been described as a member of Parliament in the return, we must have taken notice of the law of privilege of Parliament, otherwise the members would be without remedy, where they are wrongfully arrested against the law of Parliament. We are bound to take notice of their privileges as being part of the law of the land. 4 Inst., 25, says, the privilege of Parliament holds unless it be in three cases, viz., treason, felony and the peace; these are the words of Coke. In the trial of the Seven Bishops, the word "peace" in this case of privilege is explained to mean where surety of the peace is required. Privilege of Parliament holds in informations for the King, unless in the cases before excepted. The case of an information against Lord Tankerville for bribery (in 1758) was within the privilege of Parliament. We are all of opinion that a libel is not a breach of the peace. It tends to the breach of the peace, and that is the utmost. 1 Lev., 139. But that which only tends to the breach of the peace cannot be a breach of it. Suppose a libel be a breach of the peace, yet I think it cannot exclude privilege, because I cannot find that a libeller is bound to find surety of the peace in any book whatever, nor ever was, in any case except one, viz., the case of the Seven Bishops, where three judges said that surety of the peace was required in the case of a libel. Judge Powell, the only honest man of the four judges, dissented; and I am held to be of his opinion and to say that case is not law. But it shows the miserable condition of the state at that time. Upon the whole, it is absurd to require surety of the peace or bail in the case of a libeller. and, therefore, Mr. Wilkes must be discharged from his imprisonmentl

† John Wilkes was elected to Parliament in 1757, arrested on a genera, warrant, was committed to the tower in 1763 for printing a violent attack on the King. He was released, Chief-Justice Pratt deciding "that general warrants were unconstitutional, illegal and also absolutely void." 4 Johnson's Encyclopædia, 1412.

ferson's Manual* was cited as establishing the point, and
denied that he, the defendant, could be arrested and held to
bail, except for an actual breach of the peace, by any judge
or justice of the peace in this District or elsewhere.

The district attorney said that the privileges claimed by
Senators and Members ought to be rigidly scrutinized and
kept within narrow limits; if, indeed, in a form of govern-
ment like ours, they could be tolerated at all. He disliked
the name of *privilege.* It had, indeed, to use the language
of Patrick Henry, " a squinting toward monarchy." It was
a privilege and English history would show to what arbitrary
lengths it had been carried even in a limited monarchy until
the independence of the English judiciary had checked it.
In the case of Luke Hansard† printer to the House of Com-
mons, the decision of Lord Chief-Justice Denman clearly
showed that whatever might have been the decision in the
Wilkes case, the doctrine of Parliamentary privilege, as for-
merly maintained and acted upon, was emphatically repu-
diated by an honest and upright judge uttering from the
English bench sentiments that were in unison with law and
the increasing liberality of the age. That laid down in
Jefferson's Manual was ill suited to the present age, and
Jefferson himself would not have recommended a compliance
with some of the forms and usages which were laid down
in his own manual. The court had jurisdiction and it had
power to interfere to prevent a breach of the peace, and
it was enough to charge in the warrant that " there was
probable cause to believe a breach of the peace was about to
be committed."

---

*Even in cases of treason, felony and breach of the peace, to which
privilege does not extend as to substance, yet a member is privileged as
to the mode of proceeding.

When it is found necessary for the public service to put a member
under arrest, or when, on any public inquiry, matter comes out which
may lead to affect the person of a member, it is the practice immediately
to acquaint the House * * * but the communication is subsequent
to the arrest, citing 2 Hats., 259, and 1 Blackst., 167.

†Stockdale *vs.* Hansard, 9 A. & E. Reports, Lord Chief-Justice Den
man, in this case, referring to Wilkes' case, said that Mr. Wilkes was
entitled to his release from custody by reason of his privilege of Parlia-
ment.

The court decided that the defendant's plea of privilege could not avail him in the present case.

After the testimony was closed, Judge Dunlop requested the counsel to reargue the points.

After argument by the respective counsel, the court required the defendant to give security to keep the peace towards all the citizens of the United States within the District of Columbia, and not at any time within the period of one year to leave the District with the intention or purpose of fighting a duel with Edward Stanly under the penalty of $3,000.